IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2024

**LARRY B. SEXTON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lawrence County
Nos. 36695, 33355  Christopher V. Sockwell, Chancellor**

———————————————————

**No. M2023-00320-CCA-R3-PC**

———————————————————

Petitioner, Larry B. Sexton, appeals as of right from the Lawrence County Circuit Court's denial of his petition for post-conviction relief, wherein he challenged his conviction for aggravated statutory rape, for which he received a sentence of twelve years' incarceration. On appeal, Petitioner contends that, during trial, his right to due process of law was violated when the trial court permitted the State to reopen proof following his motion for judgment of acquittal. Additionally, Petitioner asserts that he was denied the effective assistance of counsel based upon trial counsel's failure to: (1) communicate the State's plea offer to him; (2) request a trial continuance following the issuance of an amended indictment; (3) prepare a mistake of fact defense and interview potential witnesses to support this defense; (4) request a jury instruction on mistake of fact; (5) argue at sentencing and on direct appeal that NCIC entries are not "reliable hearsay" for purposes of sentencing; (6) object during sentencing when the trial court failed to comply with Tennessee Code Annotated section 40-35-106(b)(5) and raise the issue on appeal; and (7) adequately argue during trial and on appeal the issue of the reopening of proof. Following a thorough review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

John M. Schweri (on appeal), Columbia, Tennessee, and Amy Schisler (at hearing), Lawrenceburg, Tennessee, for the appellant, Larry B. Sexton.

Jonathan Skrmetti, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Gary Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

In July 2015, the Lawrence County Grand Jury filed a two-count indictment, charging Petitioner with rape and contributing to the delinquency of a minor. The State later indicted Petitioner for aggravated statutory rape and entered a nolle prosequi as to the first two counts. Petitioner proceeded to trial on the charge of aggravated statutory rape in November 2017.

*Jury trial and sentencing*

On direct appeal, this court summarized the proof presented at trial and sentencing, as follows:

> [T]he victim's mother testified that in May 2015, she was living in Loretto with her son and two daughters, one of whom was the victim. The victim was born in April 1999 and was sixteen years old. On the night of May 9, the victim's mother and her children were at their home. Jimmy Joyner and his son, Bryce, also were there. At some point, [Petitioner] arrived in his new pickup truck. The victim's mother said that she had known [Petitioner] for two years, that he was a friend, and that his daughter was about one year older than the victim. The victim and [Petitioner's] daughter went to the same high school and spent the night at each other's houses from time to time.
>
> The victim's mother testified that [Petitioner] offered to take Bryce and the victim for a ride in his truck. The three of them left in the truck and were gone fifteen to twenty minutes. When they returned, the victim's mother, Jimmy, and Bryce decided to go to The Cowpen in St. Joe's to play pool. [Petitioner] was still at the house when they left, but he was getting ready to leave.
>
> The victim's mother testified that she drove to The Cowpen. However, no one was there, so she drove across the street to Parker's bar. Only a few cars were in the bar's parking lot, so she decided to show Bryce some land she owned on Union Hill Road. The victim's mother and the Joyners left Parker's bar about 11:20 p.m., and the drive to the property took about twenty-five minutes. When they arrived at the property, the victim's mother drove toward a shed that she used as a cabin. The cabin had a deck on it. The victim's mother saw the front of [Petitioner's] truck turned toward the cabin, and the truck's headlights were shining on the deck. The victim

was lying on her back on the deck, and [Petitioner] was on top of the victim. They were not wearing any clothes. The victim's mother said that [Petitioner] "spun off" the victim and headed toward his truck and that she assumed he was going to get some clothing. The victim's mother got out of her vehicle and "took off after him." She said that she hit him more than one time and that she "called him all kinds of names."

The victim's mother testified that Bryce helped the victim get into her mother's vehicle. The victim's mother said that the victim was "somewhat incoherent" and that "[y]ou could tell she was intoxicated and she just wouldn't answer us." The victim was not intoxicated when her mother and the Joyners left to go to The Cowpen.

The victim's mother testified that [Petitioner] got dressed and started saying he was sorry. He got into his truck, the victim's mother got into her vehicle, and the victim's mother called 911. [Petitioner] drove away, and the victim's mother drove back to Union Hill Road to wait for the police. She saw [Petitioner's] truck pull into a driveway on Union Hill Road, so she blocked his truck with her vehicle. She said she "tried to jerk him out of the truck" and "scratched out at his eyes." The police arrived ten to fifteen minutes later.

On cross-examination, the victim's mother acknowledged that the victim had two Facebook pages. One of the pages was still accessible to viewers, but the victim no longer used the page. The page showed the victim's birthdate as April 13, 1990. The second page was the victim's active Facebook page and showed her birthdate as April 13, 1996. The victim's mother said that sometime in April 2015, she rode with [Petitioner] to a friend's house. She denied having a sexual relationship with him.

The victim's mother testified that beer was in her home and that she began drinking beer about 11:00 p.m. on May 9, 2015. She said that she did not see the victim drink any alcohol and denied telling the police that she allowed the victim to consume vodka that night.

Sergeant Timothy Vess of the Lawrence County Sheriff's Department (LCSD) testified that just before midnight on May 9, 2015, he responded to a call on Union Hill Road about a juvenile female who had been sexually assaulted. When Sergeant Vess arrived, the victim's mother was yelling at [Petitioner], who was sitting in his truck and was wearing only a pair of shorts. Sergeant Vess separated the victim's mother and [Petitioner] and

asked [Petitioner] if he had had sex with the victim. [Petitioner] said yes but that he did not know she was underage. Sergeant Vess called an ambulance for the victim but did not speak with her.

Heather Wilson testified that she was a registered nurse at Crockett Hospital. In the early morning hours of May 10, 2015, Wilson was called to the emergency room and was present while a doctor collected evidence from the victim for a sexual assault kit. The evidence consisted of a blood sample, vaginal swabs, oral swabs, and pubic hair combings. The victim's underwear was not with her and was collected at the scene of the alleged assault. Wilson said that the victim attempted to walk to the bathroom and that the victim was "very wobbly." The victim also was "very sleepy the entire time."

Investigator Jeff Dunn testified that on May 9, 2015, he was a criminal investigator with the LCSD and responded to the scene on Union Hill Road. An ambulance was leaving with the victim as he arrived. Investigator Dunn learned that the alleged assault had occurred at another location, so he and two other officers went "just a short distance down the road." Investigator Dunn saw a wood outbuilding with a porch. Two blankets, some clothing, and what appeared to be a used condom were on the porch. He also saw a used condom wrapper and a box of condoms that had been "ripped open." The box was supposed to contain three condoms, but only two wrapped condoms were in the box.

Investigator Dunn testified that he swabbed the inside and the outside of the used condom. He later collected oral swabs from the victim and [Petitioner] and sent all of the swabs to the Tennessee Bureau of Investigation (TBI) Crime Laboratory. He also collected the victim's sexual assault kit and sent it to the TBI. Investigator Dunn tried to talk with the victim that night, but she was unable to give him any information about the incident.

Heather Lenzy of the TBI Crime Laboratory testified as an expert in forensic biology and analysis that she analyzed the evidence collected in this case and that the condom found on the porch was not suitable for analysis because it was "covered in mold." She analyzed the swab of the outside of the condom, and the swab was negative for semen. The swab of the inside of the condom showed the presence of semen but not sperm. She stated that finding semen without sperm was not unusual and could be explained by a vasectomy, a low sperm count, or "a very small amount of semen" in the

condom. The oral and vaginal swabs from the victim's sexual assault kit did not show the presence of semen.

Carrie Schmittgen, a special agent forensic scientist with the TBI, testified as an expert in forensic biology that she analyzed the condom swabs for DNA. DNA on the swab of the outside of the condom matched the victim, and DNA on the swab of the inside of the condom matched the victim, [Petitioner], and an unknown individual. Agent Schmittgen acknowledged that the presence of DNA from a third person could have resulted from the swab's collection process. On cross-examination, Agent Schmittgen acknowledged that [Petitioner's] DNA was not on the swab of the outside of the condom.

The State recalled Investigator Dunn to the stand. According to [Petitioner's] driver's license information, he was born in March 1972.

The jury found [Petitioner] guilty of aggravated statutory rape, a Class D felony. After a sentencing hearing, the trial court sentenced him as a Range III, career offender to twelve years to be served at sixty percent release eligibility.

. . . .

[Prior to trial], the State filed a notice of intent to seek enhanced punishment as a career offender pursuant to Rule 12.5, Tennessee Rules of Criminal Procedure. The notice listed the following felony convictions for [Petitioner] from the Nineteenth Circuit Court of St. Lucie County, Florida: (1) "Larceny X 5," burglary of a conveyance, and possession of burglary tools with a conviction date of July 26, 1994; (2) burglary of a conveyance and damage to property with a conviction date of January 17, 1995; (3) burglary of a dwelling with a conviction date of February 3, 1997; (4) grand theft of a motor vehicle committed on October 8, 1998, with a conviction date of December 30, 1998; and (5) grand theft of a motor vehicle committed on November 13, 1998, with a conviction date of December 30, 1998. The notice also listed attempted bribery of a witness with a conviction date of April 5, 2017, in the Lawrence County Circuit Court.

At [Petitioner's] January 4, 2018 sentencing hearing, the State introduced his presentence report into evidence. Defense counsel objected to the admission of the report on hearsay grounds, but the trial court overruled the objection. According to the report, the then forty-five-year-old

- 5 -

[Petitioner] was married and had one daughter, one son, and two stepsons. [Petitioner] told the investigating officer who prepared the report that he graduated from Westwood High School in St. Lucie, Florida. However, when the officer contacted Melodie Golden in the attendance office at Westwood, Golden reported that [Petitioner] dropped out of Westwood after the ninth grade and did not attend any other high school in the St. Lucie School District. In the report, [Petitioner] described his physical health as "good" and his mental health as "fair" and stated that he began drinking alcohol when he was fifteen years old but stopped drinking in 2014. [Petitioner] denied using any nonprescription or illegal drugs and said that he had been the "owner/operator" of Sexton Truck Company since 1996.

The report showed that [Petitioner] began committing crimes when he was twenty-one-years old and that he had numerous prior felony and misdemeanor convictions in St. Lucie, Florida, and Lawrence County, Tennessee. Of the prior convictions in the report, the State advised the trial court that it was relying on the following convictions in St. Lucie, Florida, to establish [Petitioner's] status as a career offender: two convictions on December 30, 1998, for grand theft of a vehicle; a conviction on February 3, 1997, for burglary of a dwelling; a conviction on January 17, 1995, for burglary of a conveyance; and a conviction on July 26, 1994, for grand larceny. The State also advised the trial court that it was relying on a September 6, 1989 conviction in St. Lucie, Florida, for escape, which was not listed in the presentence report. For the six convictions, the State introduced into evidence photocopies of certified judgments of conviction. The State advised the trial court that it had introduced the original certified judgments of conviction into evidence at another sentencing hearing for [Petitioner] on April 5, 2017, and requested that the trial court take judicial notice of the originals from the previous hearing. [Petitioner] objected to the documents as hearsay, but the trial court overruled the objection. Finally, the State introduced into evidence a certified judgment of conviction from the Lawrence County Circuit Court for a 2017 conviction of attempted bribery of a witness, a Class D felony. The State argued that based on [Petitioner's] seven prior felony convictions, he qualified as a career offender.

The trial court noted that aggravated statutory rape was a Class D felony and that [Petitioner] had to have at least six prior Class D or E felony convictions in order to be sentenced as a career offender. The court found that [Petitioner's] six prior convictions in Florida qualified him as a career offender and sentenced him as a Range III, career offender to twelve years in confinement.

- 6 -

*State v. Sexton*, No. M2018-00874-CCA-R3-CD, 2019 WL 5700889, at *1-5 (Tenn. Crim. App. Nov. 5, 2019) (footnote omitted), *perm. app. denied* (Tenn. Mar. 26, 2020). Upon review, this court affirmed Petitioner's judgment of conviction, and the Tennessee Supreme Court denied further review. *Id*. at *1.

*Post-conviction proceedings*

Petitioner subsequently filed a timely pro se petition for post-conviction relief. Following the appointment of counsel, Petitioner filed an amended petition followed by a second amended petition.

At an evidentiary hearing, trial counsel testified that he represented Petitioner in this matter and that he had twenty-five years' experience practicing criminal law. Trial counsel stated that Petitioner was originally charged in a two-count indictment with rape and contributing to the delinquency of a minor. Trial counsel said that he had discussions with the prosecutor about "rape versus statutory rape" and that, as a result, the State returned to the grand jury and obtained an amended indictment adding a charge of aggravated statutory rape, which was the offense that Petitioner "actually went to trial on." Trial counsel said that he "did not approach the case differently" after the amended indictment "because [he] did not ever see there was any evidence of [forcible] sexual penetration" and that he "always kind of treated [the allegations] as a statutory rape."

Trial counsel said that, in looking through discovery and speaking with Petitioner about the facts of the case, "there was alcohol involved and everyone was drinking and that there was a consensual relationship that occurred between [Petitioner] and [the victim]." Trial counsel testified that the State alleged the victim was intoxicated at the time of the offense and unable to consent. He stated, however, that "[t]he fact that [the victim] was under 18 and a minor was a worse factor." Trial counsel discussed with Petitioner that the victim had been "holding herself out to be an adult" on several Facebook pages.

Regarding the theory of defense, trial counsel said:

> Our primary slant on the defense in this case was a lack of penetration by [Petitioner] and the victim. And so, it was not that that person wasn't present at this remote location when the act allegedly happened; it was that the act the State was pursuing [Petitioner] under didn't happen, that [Petitioner and the victim] were in a compromising position but the sexual intercourse was not consummated.

As to Petitioner's claim that trial counsel failed to communicate an offer from the State to Petitioner, counsel said, "I don't recall . . . omitting or failing to convey any

- 7 -

information about [Petitioner's] case." Trial counsel said that he did not specifically recall settlement negotiations but that, if the State had made an offer to settle the case prior to trial, he was "confident" he would have conveyed that offer to Petitioner.

Regarding his communication with Petitioner, trial counsel explained:

At the time we were getting ready for this case, [Petitioner] was out on bond and would, at his leisure, drop by my office and speak with me about the case. So we talked fairly regular.

I mean, anywhere from once a week to once a month during the time this case was pending, he would drop in my office and raise any concerns or let me know what he was thinking about the case.

Trial counsel explained that the victim was not called as a witness at trial but that the victim's mother testified. Trial counsel recalled that the victim had two Facebook pages in which she asserted she was twenty-five years old and nineteen years old, respectively. He said that he cross-examined the victim's mother about the victim's Facebook pages and that she confirmed the Facebook pages belonged to the victim and that the victim "made alias Facebook pages." Trial counsel said that he did not call the victim as a witness at trial because he had been unable to interview her, and he did not know what she would say on the stand. He explained that the victim had relocated to Florida. When asked if he should have called the victim to testify, trial counsel said that the only thing she could have added to the defense "possibly . . . was . . . that penetration did not occur[.]" Trial counsel stated that there were lab reports "which seemed to refute . . . the assertion that penetration did not occur." He acknowledged that a condom was found at the scene and that the condom was sent to the crime lab for examination and testing.

Trial counsel agreed that he did not subpoena any rebuttal witnesses but stated, "I don't know, really, what that would have proven." Trial counsel testified that, although the victim's mother testified that the victim and Petitioner's daughter were friends and went to school together, the defense theory was that "teenagers will frequently have friends that are a year or two or three older than them . . . and that that shouldn't have been notice to [Petitioner] that [the victim] was underage."

Trial counsel testified that, at sentencing, he objected to the introduction of Petitioner's Florida convictions, which were used to determine that Petitioner was a career offender. Regarding Petitioner's Florida convictions, he testified that the State attempted to obtain certified copies from the Florida court and that the Florida court clerk "had e-mailed, or faxed, electronically submitted somehow to the DA's office the requested information." He said that the State did not have the originals of the certified judgments

from Florida, explaining that the judgments "didn't have the raised seal on them like we would typically get from a court clerk." He said that he objected to the admission of the documents based upon their not having the official seal on the documents but only a photocopy of the seal; however, the trial court overruled his objection.

Trial counsel testified that he also represented Petitioner at the motion for new trial hearing and on appeal. He agreed that he raised four grounds in Petitioner's direct appeal, including sufficiency of the evidence, an "issue about the reopening of the proof," and the trial court's determination that Petitioner was a career offender.

Petitioner testified that, "on the day that the trial started, the State reduced from rape to statutory rape[.]" Petitioner said that he asked trial counsel to request a continuance, but he could not recall if trial counsel made the request. He agreed that he would have been able to help trial counsel "format a defense" for the amended indictment if trial counsel had obtained a continuance.

Petitioner agreed that trial counsel objected, at sentencing, to the admission of his Florida judgments of conviction; Petitioner testified, however, that trial counsel "wasn't thorough about the way that he responded."

Petitioner stated that he did not ask trial counsel to call any rebuttal witnesses. He explained that, at that point in the trial, he was "shutting down mentally." When asked if the victim would have testified against him if counsel had called her as a witness, Petitioner responded:

> I don't believe she would have. If she did, she would have told the truth about what she told me her age was and that she had never stayed at my house. And I had never met her prior to this incident being -- other than on Facebook talking back and forth on social media.
>
> . . . .
>
> I believe if [the victim] was put on the stand that she would have told the truth on it. I mean, she was being dishonest with the Facebook stuff, but I think put on the stand and that kind of pressure that she would have told the truth about what went on, you know, that she told me she was 19 years old; that that was the first time I had physically met with her, even though I knew her mom.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On October 31, 2022, the post-conviction court entered a written order

- 9 -

denying relief. On November 22, 2022, Petitioner filed a motion for rehearing, which the post-conviction court denied in an order filed February 17, 2023. Petitioner filed this untimely appeal on March 3, 2023.

## Analysis

On appeal, Petitioner contends that his right to due process of law was violated when the trial court permitted the State to reopen proof following his motion for judgment of acquittal. Petitioner further contends that he was denied the effective assistance of counsel based upon trial counsel's failure to: (1) communicate the State's plea offer to him; (2) request a trial continuance following the issuance of the amended indictment; (3) prepare a mistake of fact defense and interview potential witnesses to support this defense; (4) request a jury instruction on mistake of fact; (5) argue at sentencing and on direct appeal that NCIC entries are not "reliable hearsay" for purposes of sentencing; (6) object during sentencing when the trial court failed to comply with Tennessee Code Annotated section 40-35-106(b)(5) and raise the issue on appeal; and (7) adequately argue during trial and on appeal the issue of the reopening of proof.

### I. Untimely notice of appeal

Initially, we must address the untimeliness of Petitioner's notice of appeal. Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). In deciding whether to grant a waiver regarding an untimely notice of appeal, this court "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." *Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing *Hill*, 1996 WL 63950, at *1).

Here, the post-conviction court entered a written order denying relief on October 31, 2022. On November 22, 2022, Petitioner filed a motion for rehearing, which the post-conviction court denied in an order filed February 17, 2023. Petitioner filed a notice of appeal on March 3, 2023, approximately four months after the post-conviction court entered its order denying relief but within thirty days of the order denying the motion for

- 10 -

rehearing. A motion for rehearing, however, is not one of the motions that tolls the time for filing a notice of appeal. *See* Tenn. R. App. P. 4(c).

Petitioner has not provided an explanation for his failure to file a notice of appeal within thirty days after the date of entry of the order denying post-conviction relief, but we note that the State did not raise the issue of the untimely notice of appeal in its brief and did not request that this court dismiss Petitioner's appeal. Additionally, there is no indication that the length of the delay in filing the notice of appeal placed an undue burden on the State to defend the case. After reviewing the relevant factors, we conclude that the "interest of justice" is best served by granting a waiver in this case. *See* Tenn. R. App. P. 4(a); *see also Crittenden v. State*, 978 S.W.2d 929, 932 (Tenn. 1998).

*II. Post-conviction standard of review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id*. (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id*. (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

*III. Trial court's reopening of the State's proof*

Petitioner contends that his right to due process of law was violated when the trial court allowed the State to reopen its proof following his motion for judgment of acquittal at trial. The State responds that Petitioner has waived our consideration of the issue by failing to raise it in his petition or at the post-conviction hearing. Additionally, the State contends that this issue was previously determined on direct appeal and, therefore, may not be relitigated during post-conviction proceedings.

As noted by the State, Petitioner did not assert in any of his post-conviction petitions that his right to due process of law was violated by the trial court's reopening of proof. Generally, issues not raised in the post-conviction petition are subject to waiver. *See*, *e.g.*, *Foley v. State*, No. M2018-01963-CCA-R3-PC, 2020 WL 957660, at *7 (Tenn. Crim. App. Feb. 27, 2020) (citing *Angel v. State*, No. E2018-01551-CCA-R3-PC, 2019 WL 6954186, at *7 (Tenn. Crim. App. Dec. 18, 2019)), *no perm. app filed*. However, this court may extend appellate review to issues presented for the first time at the post-conviction hearing "if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) (citations omitted). At the evidentiary hearing in this case, no testimony was elicited about the reopening of the State's proof after the defense moved for judgment of acquittal, and the post-conviction court's written order did not address the issue. Accordingly, we conclude that the claim is waived.

Further, we agree with the State that the issue is "previously determined." A ground for relief has been previously determined when "a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h). "A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." *Id.*; *see Miller v. State*, 54 S.W.3d 743, 747-48 (Tenn. 2001). Issues that have been "previously determined" may not be relitigated in a post-conviction petition. *See* Tenn. Code Ann. § 40-30-106(f).

On direct appeal, Petitioner raised the issue of the trial court's reopening of the State's proof, and this court addressed the merits of the claim, as follows:

> [Petitioner] contends that the trial court erred by allowing the State to reopen its proof after he moved for a judgment of acquittal so that Investigator Dunn could testify about his age. The State argues that the trial court acted within its discretion when it allowed the State to recall Investigator Dunn and that, in any event, the proof was sufficient to show that [Petitioner] was much older than the victim. We conclude that the trial court did not abuse its discretion by allowing the State to reopen its proof.
>
> At the conclusion of Agent Schmittgen's testimony, the trial court dismissed the jury for the day, and the State advised the court that it did not intend to call any additional witnesses. When court resumed the next day, the trial court asked the prosecutor "if the State was, in fact, resting its proof-in-chief," and the prosecutor responded, "[W]e are, Judge." At that point, defense counsel made a motion for judgment of acquittal on the basis that the State failed to present any proof of [Petitioner's] age, which was a necessary

element of aggravated statutory rape. Defense counsel argued, "They must prove [Petitioner] is at least ten years older than the victim, and in this case, they have not done so."

The prosecutor responded that he thought the victim's mother testified about [Petitioner's] age but that he would recall Investigator Dunn to the stand "out of an abundance of caution." Defense counsel asserted that the trial court should not allow the State to reopen its proof "because the State just rested." The prosecutor noted that "we haven't announced to the jury that we've rested" and contended that the trial court should allow the State to reopen its proof so that the State could have Investigator Dunn testify about [Petitioner's] age from [Petitioner's] driver's license. The prosecutor noted, "And there's certainly circumstantial evidence already in the record. [The victim's mother] testified that [Petitioner] had a daughter that was one-year older than her daughter. So, unless he had that daughter at the age of nine, he would be at least ten years older than [the victim]."

The trial court ruled that the "official resting of the case" had to occur in the presence of the jury and that the State could recall Investigator Dunn to the stand. The State recalled Investigator Dunn, and he testified that information from [Petitioner's] driver's license showed [Petitioner] was born in March 1972. At the conclusion of his testimony, the State pronounced that it was resting its case-in-chief.

"Aggravated statutory rape is the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c). Thus, the State was required to prove that [Petitioner] was at least twenty-six years old on May 9, 2015.

Initially, we disagree with the trial court's determination that the State had not closed its proof when it requested to recall Investigator Dunn to the stand. After Agent Schmittgen's testimony, the State advised the trial court that it did not intend to call any additional witnesses. The next morning, the State advised the trial court that it was resting its case-in-chief. Based on the State's assertions, defense counsel made, and the trial court entertained, a motion for judgment of acquittal. Therefore, in our view, the State had closed its proof even though it had not done so formally in front of the jury. *See* Tenn. R. Crim. P. 29(b) (providing that defendant may make a motion or trial court may order judgment of acquittal "after the evidence on either side is

- 13 -

closed"); *State v. James*, 315 S.W.3d 440, 455 (Tenn. 2010) (providing that Rule 29(b) "empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the [S]tate rests or at the conclusion of all the evidence").

This court has observed that "the decision of whether to reopen the proof for further evidence is within the discretion of the trial court, and the decision of the trial court will not be set aside unless there is a showing that an injustice has been done." *State v. Brock*, 940 S.W.2d 577, 580 (Tenn. Crim. App. 1996). Here, the trial court allowed the State to recall Investigator Dunn briefly in order to present additional proof of [Petitioner's] age. As noted by the State, the State already had presented circumstantial evidence that [Petitioner] was at least ten years older than the victim. Specifically, the victim's mother had testified that [Petitioner's] daughter was in high school and was about one year older than the sixteen-year-old victim, and the jury was able to view [Petitioner] in the courtroom. Thus, we are unable to conclude that the trial court abused its discretion or that an injustice was done to [Petitioner].

*Sexton*, 2019 WL 5700889, at *3-4 (footnote omitted). Because this court addressed the issue on direct appeal and found it to be without merit, it is "previously determined" and cannot be revisited in post-conviction proceedings. *See* Tenn. Code Ann. § 40-30-106(f). Petitioner is not entitled to relief.

### *IV. Ineffective assistance of counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see Henley*, 960

S.W.2d at 579.  We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision.  *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases."  *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see Goad*, 938 S.W.2d at 369.  In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.  Strategic decisions of counsel are given deference but only when such choices are informed ones based upon adequate preparation.  *Id*. (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992)).

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense.  *Goad*, 938 S.W.2d at 370.  Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

### A. Failure to communicate the State's plea offer

Petitioner asserts that trial counsel failed to communicate the State's plea offer to him and that because of "the relatively strong evidence against [him] and his potential exposure[,]" there was a reasonable probability that he would have accepted the plea and avoided receiving the maximum sentence for the offense.

As to Petitioner's claim that trial counsel failed to communicate an offer from the State to Petitioner, trial counsel said, "I don't recall . . . omitting or failing to convey any information about [Petitioner's] case."  Trial counsel said that he did not specifically recall settlement negotiations but that, if the State had made an offer to settle the case prior to trial, he was "confident" he would have conveyed that offer to Petitioner.

In denying relief on the claim, the post-conviction court determined that Petitioner failed to prove by clear and convincing evidence that the State extended a plea offer to Petitioner or that trial counsel failed to convey such an offer to Petitioner.  The court accredited trial counsel's testimony that it was his normal practice to provide his client any offer made by the State "as soon as possible" and that "it was [trial counsel's] belief that

he did so." The evidence does not preponderate against the post-conviction court's findings, and "questions concerning the credibility of the witnesses" and "the weight and value to be given their testimony" were resolved by the post-conviction court in the State's favor. *See Fields*, 40 S.W.3d at 456. Thus, Petitioner has not established deficient performance on the part of trial counsel and is not entitled to relief.

## B. Failure to request a trial continuance

Petitioner next asserts that trial counsel rendered ineffective assistance by failing to request a continuance after the State filed an amended indictment. Petitioner contends that the amended indictment "reasonably required sufficient time to formulate a defense to the charges" and that, following the amended indictment, counsel was not prepared for trial.

In denying relief on this claim, the post-conviction court found that the new charge was filed approximately two months prior to trial. The court accredited trial counsel's testimony that he had already been preparing for a defense of statutory rape, and thus, a continuance was not necessary in that it would be the same defense regardless of whether Petitioner proceeded to trial on the charge of rape or aggravated statutory rape. The record does not preponderate against the post-conviction court's findings. *Fields*, 40 S.W.3d at 458. At the hearing, Petitioner testified that, "on the day that the trial started, the State reduced from rape to statutory rape[.]" He said that he asked counsel to request a trial continuance and opined that he would have been able to help trial counsel "format a defense" for the amended indictment if counsel had obtained a continuance. Trial counsel, however, testified that he "did not approach the case differently" after the amended indictment "because [he] did not ever see there was any evidence of forceable sexual penetration" and that he "always kind of treated [the allegations] as a statutory rape."

Here, Petitioner has not shown that trial counsel's failure to request a continuance fell below "an objective standard of reasonableness under prevailing professional norms" or that the result of the proceeding would have been different if counsel had requested a continuance to further prepare a defense. *See Goad*, 938 S.W.2d at 369. Petitioner is not entitled to relief on this claim.

## C. Failure to present a mistake of fact defense

Petitioner asserts that trial counsel rendered ineffective assistance based upon counsel's failure to sufficiently present a mistake of fact defense. He contends that, on "numerous occasions online[,]" the victim had held herself out as an adult and that trial counsel had failed to interview and call witnesses to testify to this. He maintains that, despite having a substantial defense, trial counsel "basically put up no defense."

- 16 -

In its order denying relief, the post-conviction court considered this claim and noted that, "at trial, the victim's mother testified that the victim had two Facebook pages showing birthdays in 1990 and 1996." The court found that, "[c]learly, [trial counsel] brought out this information to the jury." In his brief, Petitioner argues that trial counsel's questioning of the victim's mother about the Facebook pages was insufficient and suggests that counsel should have interviewed and called additional witnesses; however, he failed to produce these witnesses at the post-conviction hearing. This court may not speculate as to the evidence that trial counsel might have introduced at trial. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990); *Starner v. State*, No. M2018-01015-CCA-R3-PC, 2019 WL 3856852, at *10 (Tenn. Crim. App. Aug. 16, 2019), *no perm. app. filed*. As such, Petitioner has failed to establish prejudice under *Strickland*, and he is not entitled to relief on this issue.

### D. Failure to request a jury instruction on mistake of fact

Petitioner argues that he was denied the effective assistance of counsel based upon trial counsel's failure to request a jury instruction on the defense of mistake of fact under Tennessee Code Annotated section 39-11-502. He asserts that the defense was fairly raised by the proof as there was testimony that the victim had held herself out as an adult on multiple Facebook pages.

In response, the State notes that Petitioner failed to raise this claim in his pro se petition for post-conviction relief, in his amended petition, or in his second amended petition. Additionally, Petitioner did not raise the issue at the post-conviction hearing, and as a result, the post-conviction court did not address the claim in the order denying relief. As previously noted, issues not raised in the post-conviction petition are generally subject to waiver. *See, e.g., Foley*, 2020 WL 957660, at *7. Although this court may extend appellate review to issues presented for the first time at the post-conviction hearing "if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection[,]" *Holland*, 610 S.W.3d at 458, at the evidentiary hearing, no testimony was elicited about the trial court's jury instructions, and the post-conviction court's written order did not address this issue. Accordingly, we conclude that this issue is beyond the permissible scope of our review and that it is waived. *See id*.

### E. Failure to argue that NCIC entries are not "reliable hearsay"

Petitioner contends that "the State failed to introduce original, certified copies of [his] alleged convictions from the state of Florida" at sentencing and argues that "changes in technology and the ease of creating (or falling victim to) digital fakes renders alleged NCIC entries unreliable such that they should no longer be admissible" as reliable hearsay.

- 17 -

He maintains that trial counsel rendered ineffective assistance by failing to advance this argument at sentencing and on appeal.

We note that Petitioner failed to raise this claim in any of his petitions or at the post-conviction hearing and that, consequently, the post-conviction court did not address the issue in its order. Accordingly, we conclude that this issue is beyond the permissible scope of our review and that it is waived. *See id.*

### F. Failure to raise a challenge under Tenn. Code Ann. § 40-35-106(b)(5)

Petitioner maintains that, at his sentencing hearing, the trial court failed to examine his Florida convictions to determine whether they qualified as felonies in Tennessee, as required by Tennessee Code Annotated section 40-35-106(b)(5), and that, as a result, "[i]t was . . . error for the trial court to sentence [him] as a career offender based on the use of out of state convictions." Petitioner contends that he was denied the effective assistance of counsel based upon trial counsel's failure to challenge, at sentencing and on appeal, the trial court's failure to comply with the sentencing statute.

As noted by the State in its brief, Petitioner did not include this claim in his pro se or amended petitions for post-conviction relief; he did not raise the issue at the evidentiary hearing, and the post-conviction court did not address the claim in its written order. Once again, because Petitioner did not raise this issue in any of his petitions or argue the issue at the post-conviction hearing, we conclude that this allegation of ineffective assistance of counsel is waived and beyond the permissible scope of our review. *See id.*; *Foley*, 2020 WL 957660, at *7; *Angel*, 2019 WL 6954186, at *7. Petitioner is not entitled to relief.

### G. Failure to adequately argue against the reopening of proof at trial

Petitioner avers that he was denied the effective assistance of counsel based upon counsel's failure to adequately argue during trial and on direct appeal the issue of the reopening of the State's proof. Petitioner contends that counsel should have further researched Tennessee law and raised additional cases to support his argument. Petitioner, however, did not raise this allegation of ineffective assistance of counsel in his pro se petition for post-conviction relief, in his amended petition, or in his second amended petition. Additionally, he did not address the issue at the post-conviction hearing, and the post-conviction court did not address the claim in its order denying relief. Because Petitioner did not raise this issue in any of his petitions or argue the issue at the post-conviction hearing, we conclude that this allegation of ineffective assistance of counsel is waived and beyond the permissible scope of our review. *See Holland*, 610 S.W.3d at 458; *Foley*, 2020 WL 957660, at *7; *Angel*, 2019 WL 6954186, at *7. Petitioner is not entitled to relief.

## Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE